IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LILLIAN WOODLEY as the administratrix of the Estate of RUFUS WOODLEY,<br><br>Plaintiff,<br><br>v.<br><br>PFG-LESTER BROADLINE, INC.; KENNETH O. LESTER COMPANY, INC.,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*   CIVIL ACTION NO.: 2:07cv74-ID<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**
_____

COMES NOW the Plaintiff, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files her opposition to the Defendants' Motion for Summary Judgment. As will be demonstrated, the Plaintiff has produced substantial evidence of causation and, therefore, there exists genuine issues of material facts which require that the Defendants' motion be denied.[1]

---

[1] All citations to the record contained herein are attached as Exhibits to "Plaintiff's Evidentiary Submissions in Opposition to Defendants' Motions for Summary Judgment and Motion to Exclude," filed simultaneously herewith.

1

**I.      Statement of Facts.**

**A.      The Accident.**

This case is a noncontact wreck between Plaintiff's automobile and the Defendant's 18-wheeler truck, which occurred on August 18, 2006. As a result of the wreck, Rufus Robert Woodley died.

On August 18, 2006, Mr. and Mrs. Woodley were traveling north on I-59 to Marysville, Tennessee. (Exhibit No. 3, L. Woodley's depo. p. 13, ln. 5-14, p. 16, ln. 12-15.) They had left their home in Elmore, Alabama that morning and had stopped in Clanton, Alabama to eat breakfast. (Exhibit No. 3, L. Woodley depo., p. 13, ln. 20-23, p. 14, ln. 1-8.) Mr. and Mrs. Woodley were going to a church reunion in Marysville, Tennessee. (Exhibit No. 3, L. Woodley depo., p. 17, ln. 4-17.) As the Woodleys traveled North on I-59, Mr. Woodley attempted to pass in the left lane Defendant's 18-wheeler truck driven by Julius Abonyo. (Exhibit No. 3, L. Woodley depo., p. 18, ln. 14-20; Ex. 7, Uniform Traffic Accident Report.)  As Mr. Woodley's car was even with the cab of the Defendant's truck, the truck came over into the left lane and forced Mr. Woodley off the roadway and into the median where the car rolled several times. (Exhibit No. 3, L. Woodley depo. p. 18, ln. 18-23; p. 19, ln. 1-4; p. 22, ln. 4-19; p. 24, ln. 22; p. 25, ln. 6-20; Exhibit 4, J. Kilgore depo., p. 14, ln. 15-23; p. 32, ln. 2-14.)  As a result of the car wreck, Mr. Woodley suffered a spinal cord injury and was paralyzed from his armpits to his feet. (Exhibit No. 2, Lauridson depo., p. 35, ln. 17-23; p. 36, ln. 1-12; Ex. 8, UAB Medical records.)

**B.      Medical Condition/Injury.**

Mr. Woodley was transported by ambulance to the DeKalb Medical Center in Fort Payne, Alabama. (Exhibit No. 4, J. Kilgore depo., p. 21, ln. 1-12.) There it was determined that Mr. Woodley suffered a subluxation of his cervical vertebrae at C6-7 and a compression wedge fracture at C7. He was airlifted to UAB Hospital in Birmingham, Alabama. (Ex. 9, DeKalb Medical Center records.) Upon arrival at UAB Hospital on August 18, 2006, Mr. Woodley underwent a surgical procedure which included applying a halo to his head and a close reduction of the fractures and dislocations of his cervical vertebrae. Subsequent to the surgery, he was transferred to the intensive care unit at UAB Hospital.

Mr. Woodley suffered significant complications and developed hypotension, hypertension, bradycardia and pulmonary edema. Furthermore, cervical spine injuries at this level result in disruption of the normal function of the autonomic nervous system. This resulted in the development of high blood pressure, hypertension, as well as bradycardia. The UAB hospital records confirm that these complications occurred between August 18 and September 1, 2006, the time of his death. Systolic blood pressure remained unstable, ranging from 90 to 200 (August 18, 2006). Diastolic blood pressure's were as low as 43 (August 30, 2006). In fact, during the hospitalization, special medications (including Levophed) were necessary in attempt to stabilize blood pressure. The medical records contain an admonition to maintain the **mean arterial pressure (MAP)** above 85. However **MAP** measurements as low as 60 are documented in the medical record. Pulmonary edema was present in chest x-rays beginning in August the 21st. All of these complications are the result of the cervical spinal cord injury. (Exhibit No. 1, Lauridson Aff. at 7.)

3

Mr. Woodley developed pulmonary edema and associated respiratory insufficiency. This is a recognized complication of cervical spine fracture. Pulmonary edema resulted in increased work on the heart to maintain respiration and may result in decreased oxygen levels in the blood. Thus, pulmonary edema stresses the heart by increasing the workload on the heart and impairing the oxygen levels in the blood. (Exhibit 1, Id. at 7-8.)

Stress related to the unstable blood pressures, decreased coronary artery blood flow during times of low diastolic blood pressure and reduced levels of oxygenation associated with pulmonary edema. These stressors suffered by Mr. Woodley are the direct result of the cervical spine fracture. (Exhibit 1, Id.)

Acute emotional stress accompanies cervical spine fracture. The adverse effects of acute emotional stress on persons with heart disease, and specifically with coronary artery disease is well recognized. The emotional stress and pain that Mr. Woodley experienced following the motor vehicle crash and cervical spine fracture contributed to the deterioration of his previously stable coronary artery disease. (Exhibit 1, Id. at 9.)

On August 31, 2006, at approximately 8:45 p.m., Mr. Woodley suffered a heart attack. He subsequently died the next morning at 3:29 a.m. (Ex. 8, UAB Medical Records.)

    **C.**    **Rufus Woodley Past Medical History.**

Prior to the automobile wreck on August 18, 2006, Mr. Woodley was being seen and treated by Dr. John Williams, a cardiologist in Montgomery, Alabama. As the Defendants set forth in their brief (p. 3), Mr. Woodley was without significant heart problems after January of 2004 and his condition was being managed without surgical

4

intervention by Dr. Williams. (Exhibit No. 2, Lauridson depo., p. 94, ln. 1-6.) In fact, Mr. Woodley had two cardiac stress tests performed in 2004 and 2006. Both indicated that his coronary disease was stable. (Exhibit No. 2, Lauridson depo., p. 94, ln. 7-21.) Mr. Woodley saw Dr. Fallahi, his rheumatologist, on August 15, 2006, only three days before the wreck. Dr. Fallahi documented that Mr. Woodley's social activity was great. Mr. Woodley was playing golf, cutting grass and walking two miles three times a week. (Exhibit No. 2, Lauridson depo. p. 94, ln. 22, 23; p. 95, ln. 1-7.; Exhibit No. 10)

**I.   Standard of Review.**

**A.   Summary Judgment Standard.**

Summary judgment is appropriate only when there are no genuine issues of material fact. "Summary judgment is entered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rules of Civil Procedure 56(c); Celotex Corporation v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548 (1986). All the facts and reasonable inferences to be drawn from those facts must be viewed in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). The court's function at this stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50, 106 S.Ct. 2505. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248, 106 S.Ct. at 2510.

## B. Substantive Alabama Law on Causation.

Under Alabama law, negligence and wantonness claims require a showing of (1) a duty to a foreseeable plaintiff; (2) breach of that duty; and (3) proximate causation of injury. Crowne Investments, Inc. v. Bryant, 638 So.2d 873, 878 (Ala. 1994). In this case, the only argument the Defendants put forth in support of their Motion for Summary Judgment is that the Plaintiff cannot prove proximate cause. The Alabama Pattern Jury Instruction defines proximate causation as "that cause that naturally and probably brings about the harm." APJI 33.00. "[T]he ultimate question is whether the plaintiff's injury is 'a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury.'" Ex rel Bowden v. Wal-Mart Stores, Inc., 124 F.Supp. 2d 1228, 1234 (M.D. Ala. 2000) (quoting Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala. 1976)).

> While proximate cause is not necessarily the cause nearest the injury, the word "proximate" adds the requirement of unbroken causation between an act and an injury produced by that act. A cause within this unbroken chain of causation is said to be "proximate" and therefore actionable, while a cause not within the chain is said to be "remote" and not actionable.

Roberts, Michael L. and Cusimano, Gregory S., Alabama Tort Law, §101-03 (4th Ed. 2004). "Summary judgment is rarely appropriate in negligence actions, which almost always present factual issues of causation and of the standard of care that should have been exercised." Bell v. Colony Apartments Co., Ltd., 568 So.2d 805, 809 (Ala. 1990) (emphasis added). "Indeed, a court should grant summary judgment only when 'there is a total lack of evidence from which the fact-finder may reasonably infer a direct causal

6

relation between the culpable conduct and the resulting injury.'" Bowden at 1234 (quoting Davison v. Mobile Infirmary, 456 So.2d 14, 24 (Ala. 1984)) (emphasis in the original).

### II. There is Substantial Evidence Demonstrating That The Defendants' Negligence and Wantonness Proximately Caused Rufus Robert Woodley's Death.

The sole question before this Court on the Defendants' Motion for Summary Judgment is whether the Plaintiff presented substantial evidence that the Defendants' negligent conduct proximately caused Rufus Robert Woodley's death on September 1, 2006. The heart of the Defendants' argument is that the Plaintiff cannot prove proximate cause because her expert, Dr. James Lauridson, cannot rule out other possible causes of the heart attack besides the spinal cord injury. There are two key problems with the Defendants' argument. Number one, Dr. Lauridson does indeed rule out all other possible causes of the heart attack. Dr. Lauridson specifically stated that the spinal cord injury caused Mr. Woodley's death. The second problem with the Defendants' argument is that the Defendants offered no evidence as to the alleged "other causes" of Mr. Woodley's heart attack. In other words, the only evidence before this Court of causation is the testimony of Dr. James Lauridson who testified that the spinal cord injury caused by the Defendants caused Mr. Woodley's heart attack.

#### A. What the Evidence Demonstrates Regarding Proximate Cause.

All of the evidence in this case points to the motor vehicle accident and the resulting cervical spine injury as the proximate cause of the heart attack Mr. Woodley suffered. On August 18, 2006, Mr. Woodley was involved in a horrific motor vehicle accident caused by these Defendants. As a result, Mr. Woodley suffered a cervical

7

spine injury of the C-6 and C-7 vertebrae. During the course of his hospital stay and treatment for the spinal cord injury, Mr. Woodley suffered significant complications including hypotension, hypertension, bradycardia, and pulmonary edema. All of these complications are the result of the cervical spinal cord injury. Mr. Woodley had pre-existing heart disease. However, for three years prior to this accident, his heart disease was stable and controlled. As explained in detail by Dr. James Lauridson, the physiological and emotional stresses caused by the complications from the spinal injury caused the deterioration of his previously stabled heart disease, and, on August 31, 2006, Mr. Woodley had a heart attack. He died the next day. Although the mechanism of Mr. Woodley's death was the occlusion of the coronary artery, the cause of his death was the cervical spinal fracture resulting from the motor vehicle accident. Dr. Lauridson testified as follows:

> If it is not specifically stated, it certainly is implied that the motor vehicle accident caused the cervical spine injury, which then led to his death.

(Exhibit No. 2, Lauridson depo., p. 36, ln. 17-20.)

> Beyond reasonable medical certainty, it is my opinion that the cervical spine fracture caused this progression and I think that there is good strong evidence for that.

(Exhibit No. 2, Lauridson depo., p. 104, ln. 12-16.)

> In summary, Mr. Woodley had known severe coronary disease for several years, but prior to the automobile accident had been well managed and was clinically stable and active. However, following the severe cervical spinal cord injury, and due to the associated cardiovascular complications and stress, [sic] he suffered progressive cardiac deterioration leading to cardiac arrest and eventual death.

(Exhibit No. 26, Lauridson Expert Report at 1.)

> To state the medical chain of causation simply: the accident caused the cervical spine fracture which caused either a thrombus, a clot on a

> ruptured plaque, a coronary arterial spasm, or all of these, which caused the occlusion of Mr. Woodley's artery, which caused his death. Mr. Woodley would not have died from this heart attack but for the accident that resulted in his cervical spine fracture.

(Exhibit No. 1, Lauridson Affidavit at 10.)

The Defendants argue that Dr. Lauridson's opinions regarding the cause of death is only conjecture and speculation. There is simply no merit to the Defendants' argument. As demonstrated in the Plaintiff's Opposition to the Motion to Exclude Dr. Lauridson's testimony, Dr. Lauridson's methodologies and opinions are based on well established and well accepted methodologies in the medical community. His opinions are supported by the published medical textbooks. His opinions are supported by his own background, training, and experience. His opinions are supported by the medical records and the testimony in this case. The Plaintiff has overwhelmingly demonstrated substantial evidence to prove that the Defendants' conduct proximately caused Mr. Woodley's death in this case. Summary judgment is due to be denied.

### B. The Defendants Have Not Put Forth Any Evidence of Other Possible Causes of Mr. Woodley's Death.

The Defendants suggest that there are other plausible explanations for the cause of Mr. Woodley's death, other than his spinal cord injury. Yet, they have failed to put forth any evidence of other possible explanations. First, the Defendants argue that the blocked artery which caused the heart attack was the result of a clot, a plaque rupture with associated development of a thrombus or a coronary spasm. (Defs' Brief in Support of the Motion for Summary Judgment at 16.) What the Defendants failed to understand is that all of those events, i.e., the plaque rupture, the thrombus, or the

9

coronary spasm, was caused by the spinal cord injury. (Exhibit No. 1, Lauridson Aff. at 10.)

The Defendants also point to Dr. Papapietro's testimony in support of their argument. Yet, by the Defendants' own admission, Dr. Papapietro's testimony was "inconclusive" at best as to the cause of death. (Defs' Brief in Support of the Motion for Summary Judgment at 12.) In other words, Dr. Papapietro did not offer any opinions as to Mr. Woodley's cause of death. Dr. Papapietro's testimony simply confirmed the mechanism of death which was the occlusion of the coronary artery. The reason Dr. Papapietro declined to form an opinion in this case is because he recognized that, as a cardiologist, he is not trained in the effects that a spinal cord injury would have on the heart and the corresponding blood pressure.

> Q. Okay. And what kind of complications as far as – can someone have with a spinal cord injury that may affect their heart or their blood pressure? What kind of signs would you be looking for? What kind of complications would a person have?
>
> A. Well, I – you know, <u>that's more in the domain of the neurosurgeon</u> –
>
> Q. Right.
>
> A. -- you know, But in general, you know, anybody who – you know, I guess you're going to have to rephrase the question –
>
> Q. Yes.
>
> A. -- because –
>
> Q. All right. Well, let me ask you this. When somebody has a spinal cord injury, would that affect their blood pressure?
>
> A. Yes, it certainly can.
>
> Q. All right. And can it affect the fluids of a person's body?

A. A spinal cord injury, I – I think so. But, again, I'm not a – you know, <u>I'm not a neurosurgeon</u>, so –

Q. Right. Right.

A. -- <u>those are questions that I think are better answered by a neurosurgeon</u> –

Q. Okay.

A. -- in terms of what a –

Q. Okay.

A. -- spinal cord injury can do –

Q. What about the –

A. -- to fluid volume.

(Exhibit No. 5, Papapietro depo., p. 12, ln. 17 – p. 14, ln. 2.)

However, even given Dr. Papapietro's limited knowledge, he readily admits that the spinal cord injury might have contributed to Mr. Woodley's heart attack. (Exhibit No. 5, Papapietro's depo., at p. 24, ln. 9-11.) The Defendants tried to get Dr. Papapietro to opine that the cause of the heart attack was just a "natural progression" of Mr. Woodley's coronary disease. However, Dr. Papapietro would not make such a statement. Instead, Dr. Papapietro stated that "many patients live with blockages for years and years and years and never have a heart attack." (Exhibit No. 5, Papapietro depo., at 92, ln. 4-6.) At one point in his deposition, Dr. Papapietro even definitively stated that the heart attack was "not a natural progression" of his coronary artery disease. (Id. at ln. 8.) Instead, Dr. Papapietro testified that a spinal cord injury would put a body under severe stress and that putting someone in Mr. Woodley's condition

11

with his pre-existing heart problems under that type of stress would increase his risk of a heart attack. (Exhibit No. 2, Papapietro depo. at p. 92, ln. 22 – p. 93, ln. 12.)

Simply put, the only evidence before this Court as to the cause of Mr. Woodley's death is the testimony of Dr. Lauridson who clearly and unambiguously states that the spinal cord injury was the cause of Mr. Woodley's heart attack and death. It is the Defendants who are forced to speculate as to other possible causes, but fail to offer any evidence of these other causes.

Alabama law provides that "if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with and without support in the evidence." Evans v. Alabama Power, 474 So.2d 1102, 1104 (Ala. 1985) (citing Southern Railway Co. v. Dixon, 211 Ala. 481, 486, 100 S. 665, 669 (1924)). Mr. Woodley's death from a heart attack was caused by the "natural and probable consequence of" the Defendants' negligent act in causing the automobile accident resulting in his spinal cord injury. There is a clear unbroken chain of causation demonstrating that the spinal cord injury caused Mr. Woodley's death. It is clear that there are no other equally plausible explanations as suggested by the Defendants. Rather, all of the evidence points to the one theory of causation:

> To state the medical chain of causation simply: the accident caused the cervical spine fracture which caused either a thrombus, a clot on a ruptured plaque, a coronary arterial spasm, or all of these, which caused the occlusion of Mr. Woodley's artery, which caused his death. Mr. Woodley would not have died from this heart attack but for the accident that resulted in his cervical spine fracture.

(Exhibit No. 1, Lauridson Aff. at 10.)  As a result, the Plaintiff presented substantial evidence of causation and the Defendants' Motion for Summary Judgment is due to be denied.

### IV.    Conclusion.

As demonstrated above, the Plaintiff has presented substantial evidence that demonstrate the Defendants' negligence proximately caused the death of Rufus Robert Woodley.  Therefore, genuine issues of fact exist in this case and, pursuant to Federal Rules of Evidence 56, the Defendants' Motion for Summary Judgment must be denied.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment.

>                         /s/ Michael J. Crow_____
>                         MICHAEL J. CROW (CRO039)
>                         Attorney for Plaintiffs

OF COUNSEL:

BEASLEY, ALLEN, CROW,
 METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the original of the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those attorneys registered and I have placed a copy of the foregoing to the attorneys not set up for email notification in the United States Mail, first class, postage prepaid on this the _____ day of _____, 2008.

/s/ Michael J. Crow_____
OF COUNSEL


Matthew W. Robinett
William C. Wood
Norman, Wood, Kendrick and Turner
Financial Center, Suite 1600
505 Twentieth Street North
Birmingham, Alabama 35203

Stanley A. Cash
Huie, Fernambucq & Stewart, LLP
2801 Highway 280 South, Suite 200
Birmingham, Alabama 35223-2484