IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **LILLIAN WOODLEY** as the administratrix of the Estate of **RUFUS WOODLEY,** | * * * * |
| Plaintiff, | * * |
| v. | CIVIL ACTION NO.: 2:07cv74-ID * * |
| **PFG-LESTER BROADLINE, INC.; KENNETH O. LESTER COMPANY, INC.,** | * * * * |
| Defendants. | * * |

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE THE AFFIDAVIT OF JAMES R. LAURIDSON, M.D.

COMES NOW the Plaintiff, by and through the undersigned counsel, and submits her Opposition to Defendants' Motion to Strike the Affidavit of James R. Lauridson, M.D. In opposition thereto, the Plaintiff states as follows:

I.  **"THE SHAM AFFIDAVIT CONCEPT."**

In their Motion to Strike, the Defendants rely upon Van T. Junkins & Assoc., Inc. v. U.S. Industries, 736 F.2d 656 (11th Cir. 1984), to argue that Dr. Lauridson's affidavit should be struck because they alleged it contradicts his deposition. This argument lacks merit. "The 'sham affidavit' concept arises when there is a clear inconsistency between factual assertions in an affidavit submitted in conjunction with a motion for summary judgment and prior deposition testimony. The Eleventh Circuit has developed a standard by which to determine when certain testimony's contradictory nature renders

1

it inappropriate for consideration as creating a genuine issue of material fact." Porterfield v. Flowers Baking Co. of Opelika, LLC, 2007 WL 4373006 at *7 (M.D. Ala., December 12, 2007).

> In Van T. Junkins, the Eleventh Circuit affirmed a grant of summary judgment, holding that a district court may properly find that the party's contradictory affidavit is a sham. The appellate court explained: "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."

Israel v. Sonic-Montgomery SLM, Inc., 231 F.Supp. 2d 1156, 1163 (M.D. Ala. 2002) (citing Van T. Junkins, 736 F.2d at 657). The Eleventh Circuit cautioned, however, that "a definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence. 'An opposing party's affidavit should be considered although it differs from or varies from his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility.'" Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986).

> To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case the affiant) was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery created an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact.
>
> * * *
>
> Every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. . . . In light of the jury's role in resolving questions of credibility, a district court should not reject

2

> the content of an affidavit even if it is at odds with statements made in an early deposition.

Tippens, 805 F.2d at 953-54 (citations omitted). Courts "may *only* disregard an affidavit that 'contradicts, without explanation, previously given *clear* testimony.'" Lane v. Celotex Corp., 782 F.2d 1526, 1532 (11th Cir. 1986) (citations omitted) (emphasis in the original).

> The Eleventh Circuit has warned that the district court should apply this rule sparingly because of the harsh effect this rule may have on a party's case. Precedent requires a court to find inherent inconsistencies between an affidavit and a deposition before disregarding the affidavit. If no inherent inconsistencies exist, the general rule allowing an affidavit to create a genuine issue even if it conflicts with earlier testimony in the party's deposition governs. In these instances, any conflict or discrepancy between the two documents can be brought out at trial and considered by the trier of fact.

Shirley v. Mitsubishi Motors Corp., 2005 WL 5988668 (N.D. Ala., October 25, 2005) (citations omitted).

## II. THERE ARE NOT INHERENT INCONSISTENCIES BETWEEN DR. LAURIDSON'S AFFIDAVIT AND HIS DEPOSITION TESTIMONY.

From the outset, Dr. Lauridson has stated that the cervical spine injury resulting from the motor vehicle accident caused Mr. Woodley's death. He stated his opinion at least three separate times in his expert report and deposition.

> In summary, Mr. Woodley had known severe coronary artery disease for several years, but prior to the automobile accident had been well managed and was clinically stable and active. However, following the severe cervical spinal cord injury and due to the associated cardiovascular complications and stress, he suffered progressive cardiac deterioration leading to cardiac arrest and eventual death.

(Lauridson's Expert Report at 1 – previously attached as Ex. 26 to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Motion to Exclude.)

3

> If it is not specifically stated, it certainly is implied that the motor vehicle accident caused the cervical spine injury, which then led to his death.

(Lauridson depo., p. 36, ln. 17-20 – Ex. 2 to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Motion to Exclude.)

> Beyond reasonable medical certainty, it is my opinion that the cervical spine fracture caused this progression and I think that there is good strong evidence for that.

(Id. at p. 104, ln. 12-16.) Completely ignoring these statements, the Defendants point simply to one exchange between Dr. Lauridson and defense counsel at his deposition as supportive of their contention that Dr. Lauridson contradicted his deposition by giving his affidavit:

> Q. Do you have any opinion as to what caused that one hundred percent occlusion?
>
> A. Without an autopsy, one cannot be certain. It was thrombus or ruptured atherosclerotic plaque with overlying thrombus, possibly, but not likely, coronary spasm with associated thrombus.
>
> Q. That's really – it was the blockage of that artery that actually caused the man's death?
>
> A. Yes.

(Lauridson depo., p. 105, ln. 20 – p. 106, ln. 7.)

However, there are no inconsistencies between Dr. Lauridson's deposition and his affidavit. The affidavit was filed because the Defendants challenged not only Dr. Lauridson's qualifications to offer opinions, but also Dr. Lauridson's opinion that the spinal cord injury was the cause of Mr. Woodley's death. They contended that this opinion was unreliable because Dr. Lauridson had also testified that the occlusion of his artery caused his death. The Defendants' <u>Daubert</u> challenge required Dr. Lauridson to explain, through an affidavit, how his opinions in this case were reliable and well

4

accepted in the medical community and how the testimony regarding the occlusion of the artery as Mr. Woodley's cause of death was perfectly consistent with his opinion that the spinal cord injury caused Mr. Woodley's death.[1]  Defendants contended that the spinal cord injury and the occlusion of the artery were two separate and different causes of death.  Through his affidavit, Dr. Lauridson sought to explain the apparent confusion the Defendants were under as a result of his testimony.  Dr. Lauridson's affidavit clarified the medical chain of causation:

> To state the medical chain of causation simply:  The accident caused the cervical spine fracture which caused either a thrombus, a clot on the ruptured plaque, a coronary arterial spasm, or all of these, which caused the occlusion of Mr. Woodley's artery, which caused his death.

(Lauridson affidavit at 10 – Ex. 1 to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Motion to Exclude.).  There are no inconsistencies in Dr. Lauridson's testimony and his affidavit.  There is only an explanation as to why there are no inconsistencies.

The Defendants also contended that there is an inconsistency between Dr. Lauridson's testimony and his affidavit regarding the need for an autopsy.  The Defendants argue as follows:

> Lauridson also contradicts the certainty of the opinion he offers in his deposition:
>
> Q. What caused that artery to be completely blocked?
>
> A. Without an autopsy, one can't be very specific.  It might have been purely a thrombus or it might have been a plaque rupture with associated development of a thrombus.
>
> (Lauridson dep. P. 98 ln. 22 – p. 99 ln. 5).  However, in his subsequent affidavit he states:  "When documentation is definitive with a test showing

---

[1] The affidavit was also provided to demonstrate how Dr. Lauridson, as a forensic pathologist, was preeminently qualified to offer his opinions concerning causation in this case.

5

> a clear mechanism of death, then the forensic pathologist can determine cause of death with reasonable degree of medical certainty without the need of an autopsy." (Doc. 53-2 p. 6). Lauridson could not be "very specific" at his deposition, but now opines "with reasonable degree of medical certainty" regarding the causation element of the plaintiff's cause of action.

[Defendants' Motion to Strike at 6.] Where is the "inherent inconsistency"? In Dr. Lauridson's deposition, <u>he was asked what caused the artery to be completely blocked</u>. As Dr. Lauridson explained, it might have been either a thrombus or a plaque rupture associated with a thrombus or a coronary spasm that could have caused the artery blockage. He then noted that, without an autopsy, one could not know <u>which event caused the artery to be blocked</u>. Yet, the Defendants then cite to Dr. Lauridson's affidavit wherein he states that the cause of death (not the cause of the artery blockage) could be determined without the need for an autopsy. There is no inconsistency there. Dr. Lauridson is clearly referring to two different issues.

As Dr. Lauridson repeatedly stated in his expert report and his deposition, the cause of death was the spinal cord injury. The occlusion of the artery led to the heart attack. There was no need to perform an autopsy for what was the obvious. Yet, the Defendants are trying to muddy the medical chain of causation by arguing that an autopsy was needed to determine what caused the occlusion of the artery. Whether it was a thrombus or a plaque rupture or a coronary spasm is not important to the cause of death because each of those and/or all of those events were the result of the spinal cord injury. If anything, the game of semantics that the Defendants are playing with this Court demonstrates the very need for Dr. Lauridson's affidavit which demonstrates that there are no inconsistencies. The affidavit puts in simple laymen's terms the medical chain of causation:

6

> To state the medical chain of causation simply: The accident caused the cervical spine fracture which caused either a thrombus, a clot on the ruptured plaque, a coronary arterial spasm, or all of these, which caused the occlusion of Mr. Woodley's artery, which caused his death.

(Lauridson affidavit at 10 – Ex. 1 to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Motion to Exclude). "Precedent requires a court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." Shirley v. Mitsubishi Motors, 2005 WL 5988668 at *4 (N.D. Ala. 2005). As shown, there are no inconsistencies.

Further, Van T. Junkins and its progeny only allows an affidavit to be stricken when there is no "explanation" for the alleged contradiction. A court "may *only* disregard an affidavit that contradicts, without explanation, previously given *clear* testimony." Lane v. Celotex Corp., 782 F.2d 1526 (11th Cir. 1986) (emphasis in the original and added). Dr. Lauridson's affidavit provided a clear explanation as to why the deposition testimony regarding the occlusion of the artery was not inconsistent with his opinion that the spinal cord injury caused the heart attack. Finally, even if there is a slight discrepancy, that discrepancy would only "create an issue of credibility or go to the weight of the evidence." Tippens at 953. "Every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." Tippens v. Celotex Corp., 805 F.2d 946, 954 (11th Cir. 1986).

> In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition.

Id. at 954.[2]

---

[2] Further, it is questionable as to whether the Van T. Junkins rule applies to an expert such as Dr. Lauridson. Judge Myron Thompson explained that the Eleventh Circuit has "expressed grave doubt whether the Van T. Junkins rule can be applied to a *witness* as opposed to a *party*. . . ." Israel, 231 F.Supp.2d at 1164 (emphasis in the original).

7

## III.    CONCLUSION.

For the foregoing reasons, the Defendants' Motion to Strike Dr. Lauridson's Affidavit should be denied. Dr. Lauridson's affidavit is not a sham and does not contain any inherent inconsistencies. Instead, his affidavit was a direct response to the Defendants' challenge that Dr. Lauridson's methodology was not reliable in forming his opinions by explaining how his deposition testimony was perfectly consistent with his opinions in this case. As such, the Defendants' Motion to Strike should be denied.

/s/ Michael J. Crow
MICHAEL J. CROW (CRO039)
Attorney for Plaintiffs

OF COUNSEL:

BEASLEY, ALLEN, CROW,
 METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the original of the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those attorneys registered and I have placed a copy of the foregoing to the attorneys not set up for email notification in the United States Mail, first class, postage prepaid on this the 5th day of May, 2008.


/s/ Michael J. Crow
OF COUNSEL


Matthew W. Robinett
William C. Wood
Norman, Wood, Kendrick and Turner
Financial Center, Suite 1600
505 Twentieth Street North
Birmingham, Alabama 35203

Stanley A. Cash
Huie, Fernambucq & Stewart, LLP
2801 Highway 280 South, Suite 200
Birmingham, Alabama 35223-2484