IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LILLIAN WOODLEY, as the ) <br> Administratrix of the Estate of ) <br> RUFUS WOODLEY, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> PFG-LESTER BROADLINE, INC., ) <br> and KENNETH O. LESTER ) <br> COMPANY, INC., ) <br> ) <br>     Defendants. ) | Civil Action No. 2:07cv074-ID |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

In this wrongful death lawsuit, Lillian Woodley, as the administratrix of the estate of her deceased husband (Rufus Woodley), brings state-law negligence and wantonness claims against PFG-Lester Broadline, Inc., and Kenneth O. Lester Company, Inc., arising from an accident which occurred when a tractor-trailer moved into the lane of traffic in which the Woodleys were traveling, forcing them off the roadway.[1]  Before the court are three motions: (1) Defendants' motion to exclude (Doc. No. 40); (2) Defendants' motion for summary judgment (Doc. No. 42); and (3) Defendants' motion to strike (Doc. No.

---

[1] The court refers to PFG-Lester Broadline, Inc., and Kenneth O. Lester Company, Inc., collectively as "Defendants."  To avoid confusion, the court refers to Lillian Woodley as "Plaintiff" and Rufus Woodley as "Mr. Woodley."

55).  The motions are accompanied by memorandum briefs and evidentiary submissions. (Doc. Nos. 41, 43.)

As grounds for their motion to exclude, Defendants argue that the testimony of Plaintiff's expert witness, Dr. James R. Lauridson, M.D., as to the cause of Mr. Woodley's death does not meet the standards for admissibility set forth in Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).  Defendants' motion for summary judgment, in turn, is inextricably intertwined with the motion to exclude in that Defendants contend that Plaintiff has not presented evidence sufficient to create a genuine issue of material fact on the causation element of her negligence and wantonness claims.  Plaintiff submitted briefs and evidence, including an affidavit from Dr. Lauridson, in opposition to the motion to exclude and motion for summary judgment.  (Doc. Nos. 51, 53.)  Defendants filed reply briefs, as well as a motion to strike Dr. Lauridson's affidavit on the ground that it contradicts Dr. Lauridson's prior deposition testimony.  (Doc. Nos. 56, 57.)  Plaintiff opposes the motion to strike.  (Doc. No. 60.)

No party has requested an evidentiary hearing on any issue, and the court finds that there is an adequate record from which to rule without the need for a hearing or oral argument.  After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendants' motions are due to be denied.

## II. JURISDICTION AND VENUE

Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332 (diversity). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of each.

## III. BACKGROUND

On August 18, 2006, Rufus Woodley and his wife, Lillian Woodley, were traveling on Interstate 59 in Dekalb County, near Collinsville, Alabama, when Mr. Woodley accelerated into the left-hand lane in an attempt to pass an eighteen-wheel tractor-trailer driven by Julius Abonyo ("Mr. Abonyo"). As the Woodleys' vehicle was traveling parallel to the tractor-trailer's cab, Mr. Abonyo moved into the left-hand lane, forcing Mr. Woodley to take evasive action to avoid a collision. Mr. Woodley swerved off the roadway and lost control of his vehicle in the median. As a result, Mr. Woodley suffered a cervical spine injury (specifically, a subluxation of C6-7 cervical vertebrae and a compression fraction of C7), which left him paralyzed from the chest down.

Mr. Woodley was airlifted to and hospitalized at University Hospital in Birmingham, Alabama. On August 30, two weeks after the accident, Mr. Woodley was scheduled to be discharged to a rehabilitation facility. The next day, however, Mr. Woodley suffered a heart attack and died. The proximate cause of Mr. Woodley's death is at the center of the present dispute.

Seeking redress, Plaintiff filed a complaint on January 25, 2007, in the Middle District of Alabama, bringing state-law claims against Defendants and asserting that Defendants' employee-driver caused Mr. Woodley's death. The amended complaint, which is the operative complaint, contains four counts. In Counts One and Two, Plaintiff brings causes of action against Defendants for negligence and wantonness on the basis of *respondeat superior*. In Counts Three and Four, Plaintiff raises claims against Defendants for negligent/wanton entrustment and negligent/wanton hiring, retention, supervision or maintenance.

To prove her case, Plaintiff hired James R. Lauridson, M.D., a physician who is board-certified in internal medicine and forensic pathology with more than thirty-five years of experience, to provide expert testimony as to the cause of Mr. Woodley's death. Plaintiff tendered a written expert report to Defendants. (See Defs. Ex. 28 to Dr. Lauridson Dep. (Doc. No. 42-3 at 34).) Therein, based upon his review of pertinent medical records, Dr. Lauridson opines that, following the injury to Mr. Woodley's cervical spinal cord, and due to the associated cardiovascular complications and stress, Mr. Woodley suffered progressive cardiac deterioration leading to the heart attack and his eventual death. (Id.)

In support of their motion to exclude and motion for summary judgment, Defendants filed Dr. Lauridson's deposition testimony. Plaintiff responded, in part, by filing an affidavit from Dr. Lauridson. In his affidavit, Dr. Lauridson attests "that the cause of death of Mr. Woodley was the cervical spine fracture incurred in [the] motor

4

vehicle accident" and that the "mechanism of death is occlusion of the coronary artery." (Lauridson Aff. at 6 (Doc. No. 53-2)); (see id. at 5, stating that "[t]he cause of death, sometimes called proximate cause, is the event that initiates a sequence of events terminating in the death of an individual. The final event that results in the death of the individual is called the mechanism of death"). Dr. Lauridson sums up his medical opinion as follows:

> To state the medical causation simply: the accident caused the cervical spine fracture which caused either a thrombus, a clot on a ruptured plague, a coronary artery spasm, or all of these, which caused the occlusion of Mr. Woodley's artery, which caused his death. Mr. Woodley would not have died from this heart attack but for the accident that resulted in his cervical spine fracture.

(Id. at 10.)

### IV.  DISCUSSION

#### A.  Motion to Strike

"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc. ("Junkins"), 736 F.2d 656, 657 (11th Cir. 1984); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) ("[O]ur cases require a court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."). On the basis of Junkins,

5

Defendants move to strike Dr. Lauridson's affidavit, asserting that it contradicts his prior deposition testimony. (See Defs. Mot. Strike at 4 (Doc. No. 55).) Defendants contend that, at his deposition, Dr. Lauridson gave a clear answer to an unambiguous question. (Id. (citing Dr. Lauridson Dep. at 105-06).) Specifically, defense counsel asked Dr. Lauridson if the blockage of the coronary artery "actually caused" Mr. Woodley's death, to which Dr. Lauridson answered, "Yes." (Dr. Lauridson Dep. at 105-06.) Defendants assert that Dr. Lauridson's recent distinction between the mechanism of death and the cause of death "is a direct contradiction to his deposition testimony regarding the cause of death" and that the contradiction "invalidates [Dr.] Lauridson's affidavit" under the Junkins rule. (Id. at 5.) Pointing to Dr. Lauridson's expert report and deposition testimony, however, Plaintiff asserts that Dr. Lauridson consistently has expressed his opinion that "the cervical spine injury resulting from the motor vehicle accident caused Mr. Woodley's death." (Pl. Resp to Mot. Strike. at 3 (Doc. No. 60).) Plaintiff, thus, argues that "[t]here are no inconsistencies in Dr. Lauridson's testimony and his affidavit." (Id. at 5.)

Defendants focus their argument on Dr. Lauridson's lone use of the phrase "actually caused," rather than "mechanism," elicited during a two-hour deposition, to the exclusion of the rest of the deposition testimony. The court carefully has reviewed Dr. Lauridson's deposition testimony. Concerning causation, the court finds that, contrary to Defendants' argument, the central theme during Dr. Lauridson's deposition was whether there was a plausible medical theory causally connecting the spinal cord injury to Mr.

Woodley's death, with defense counsel attempting to elicit testimony from Dr. Lauridson discrediting that causation theory. Using varying terminology to respond to defense counsel's questions, Dr. Lauridson expressed his opinion no less than six times that "the severe cervical spine injury led to [Mr. Woodley's] progressive cardiac deterioration and cardiac arrest." (Dr. Lauridson Dep. at 34); (see id. at 24, reaffirming his opinion disclosed in his written expert report that "following the severe cervical spine injury, and due to the *associated* cardiovascular complications and stress, [Mr. Woodley] suffered progressive cardiac deterioration, leading to cardiac arrest and eventual death" (emphasis added)); (see id. at 34, stating that his written expert report "clearly . . . show[s] that the severe cervical spine injury led to [Mr. Woodley's] progressive cardiac deterioration and cardiac arrest"); (see id. at 36, testifying that "[i]f it is not specifically stated, it certainly is implied that the motor vehicle accident caused the cervical spine injury, which then led to [Mr. Woodley's] death"); (see id. at 95, opining that Dr. Sylvio Papepietro implied "causation between the cervical spine fracture and the fatal heart attack" which, "in fact, corresponds almost exactly with my interpretation of this case," *i.e.*, that, as a result of the cervical spine injury, Mr. Woodley suffered medical and physiological stresses which, in turn, "led to a deterioration of his coronary artery disease and the fatal heart attack"); (see id. at 104, concluding that "[b]eyond reasonable medical certainty, it is my opinion that the cervical spine fracture caused this progression," *i.e.*, the coronary artery blockage and the resulting heart attack). From the foregoing illustrative excerpts, the court is not persuaded by Defendants' argument that during his deposition Dr. Lauridson

relied on the occlusion of Mr. Woodley's coronary artery as the sole or proximate cause of the fatal heart attack.  Moreover, although Dr. Lauridson did not use the word "mechanism of death" during his deposition, as he used in his affidavit, he made a distinction between a forensic pathologist's ability to identify the "cause *and* manner of death."  (Dr. Lauridson Dep. at 32 (emphasis added).)  He also was careful to describe Mr. Woodley's heart attack as the "immediate cause" of death and then to state that the "severe cervical spine injury" was the triggering event.  (Id. at 33-34.)  The court cannot find, as Defendants urge, that the terminology used by Dr. Lauridson in his affidavit is inherently inconsistent with that used in his prior deposition testimony.

Relatedly, the court finds that there is not an inherent contradiction between the affidavit and deposition testimony because Plaintiff has provided an explanation for any variances created by the affidavit.  (Pl. Resp. to Mot. Strike at 4-5.)  Specifically, Plaintiff says that she submitted Dr. Lauridson's affidavit to clarify Defendants' "apparent confusion" that "the spinal cord injury and the occlusion of the artery were two separate and different causes of death."  (Id.)  Indeed, the court finds that Dr. Lauridson's illustration, set out in the affidavit, helps resolve any disparities between his affidavit opinions and the theory of the case he laid out during his deposition.  Dr. Lauridson provides the example of an individual who is shot in the head, but survives several weeks before dying from "complicating pneumonia."  (Dr. Lauridson Aff. at 5.)  He explains,

> [T]he mechanism of death is pneumonia.  That is, the immediate process
> that caused the person's death was the pneumonia.  However, the process
> leading to the fatal pneumonia was initiated by the brain injury.  Therefore,

8

> the cause of death was brain injury and the mechanism of death was pneumonia. If the brain injury was from a gunshot to the head inflicted by someone else, the case is considered a homicide. It would be a serious medical error to consider the cause of death as pneumonia and ignore the actual cause of death, *i.e.*, the brain injury from the gunshot wound. The legal process would be subverted by not recognizing the role of the brain injury as the cause of death.

(Id.) Dr. Lauridson's opinion that there was a causal progression leading to Plaintiff's death which began with the cervical spine injury arguably is stated more concisely and clearly in his affidavit than in his deposition testimony, but that does not mean that Junkins precludes consideration of the affidavit. Stated differently, the court finds that Plaintiff has demonstrated that the affidavit is not inherently inconsistent with the deposition on the issue of causation, but, rather, that the affidavit explains what arguably could be construed as an ambiguity in the deposition testimony.

Defendants also argue that Dr. Lauridson offers conflicting testimony as to whether an autopsy was required to determine the "cause" of Mr. Woodley's death. (See Defs. Mot. Strike at 6-7, contrasting Dr. Lauridson Dep. at 98, 99, 105, with Dr. Lauridson Aff. at 6.) Plaintiff, however, asserts that, according to Dr. Lauridson, "[w]hether it was a thrombus or a plaque rupture or a coronary spasm is not important to the cause of death because each of those and/or all of those events were the result of the spinal cord injury." (Pl. Resp. to Mot. Strike at 6 (Doc. No. 55).) Plaintiff asserts that Defendants simply "are trying to muddy the medical chain of causation by arguing that an autopsy was needed to determine what caused the occlusion artery." (Id.)

Again, the court agrees with the conclusion urged by Plaintiff. In his affidavit, Dr. Lauridson says that, when the "mechanism of death" is not "clear," an autopsy is required. (Dr. Lauridson Aff. at 6.) Here, Dr. Lauridson has not wavered as to his opinion that the occlusion of the right coronary artery heart was the "mechanism" or "immediate cause" of Mr. Woodley's death. (Lauridson Aff. at 6); (Dr. Lauridson Dep. at 34.) The court finds, as argued by Plaintiff, that it is reasonable to interpret Dr. Lauridson's affidavit to mean that, because in Mr. Woodley's case there is a clear mechanism of death, an autopsy was not required to ascertain the proximate cause of death. Namely, the court finds that Dr. Lauridson's affidavit is not inherently inconsistent with his deposition testimony because Dr. Lauridson testified that an autopsy is required to narrow down which of three conditions – a thrombus, plaque rupture or coronary spasm – caused the artery to become completely blocked, not that an autopsy was required to determine that the spinal cord injury was the proximate cause of death.

In sum, having carefully compared Dr. Lauridson's deposition testimony with his later affidavit, the court finds that Defendants have not shown that the deposition and affidavit are inherently inconsistent. Any discrepancies between the affidavit and deposition testimony can be brought out through cross-examination. See Kennett-Murray Corp. v. Bone, 622 F.2d 887, 895 (5th Cir. 1980) ("While some statements in [the employee's] deposition differ with those in his affidavit, these conflicts present questions of credibility which require jury resolution."). Accordingly, the court finds that Defendants' motion to strike is due to be denied.

B.  Motion to Exclude

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702.  Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  As the parties are aware, in Daubert, *supra*, the Supreme Court of the United States charged trial judges with the responsibility of acting as gatekeepers to determine whether proposed expert testimony satisfies the dictates of Rule 702.  In Daubert, the Supreme Court explained that the district court's gatekeeping responsibilities require the court to "determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  509 U.S. at 592-93.  Essentially, for expert testimony to be admissible, it must be "not only relevant, but reliable."  Id. at 589.  The "relevancy" requirement ensures that an expert's opinion will be helpful to the trier of fact.  McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004).  The "reliability" requirement is designed to exclude so-called "junk science," Daubert, 509 U.S. at 593, and ensure that the "knowledge" offered is "more than subjective belief or unsupported speculation."  Id. at 591.  Expert testimony must be supported by "appropriate validation – *i.e.*, 'good

grounds,' based on what is known."[2] Id. at 590. "The proponent of expert testimony bears the burden of showing that the expert's methodology is reliable." Phillips v. Am. Honda Motor Co., 238 Fed. Appx. 537, 540 (11th Cir. 2007). Finally, "[t]he focus . . . must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595.

The bulk of Defendants' arguments is based upon the absence of an autopsy. Arguing that the methodology underlying Dr. Lauridson's conclusion that Plaintiff's cervical spine injury led to the heart attack is scientifically unreliable and speculative, Defendants point to Dr. Lauridson's admission that, without an autopsy which was not performed, he [Dr. Lauridson] cannot determine which of three conditions "caused" the occlusion of the right coronary artery which, in turn, "caused" Mr. Woodley's heart attack. (Defs. Br. in Support of Mot. to Exclude at 6-8); (Lauridson Dep. at 105-06); (see also Defs. Reply Br. at 2-3 (Doc. No. 56).) As to relevancy, Defendants say that there is no scientific connection between Dr. Lauridson's testimony and the facts because "the science Dr. Lauridson admittedly requires in order to determine what caused the occluded artery, an autopsy, and an autopsy was never performed." (Defs. Br. in Support of Mot. to Exclude at 11-12.) From Dr. Lauridson's testimony, Defendants assert that "it is just

---

[2] The Daubert court sets out a number of non-exhaustive factors for the court to consider when determining whether a particular scientific methodology is reliable, including "whether it can be (and has been) tested," "the known or potential rate of error," "the existence and maintenance of standards controlling the technique's operation," and whether the technique "has been subjected to peer review and publication." 509 U.S. at 593-94.

as likely" that "a plaque rupture with associated development of a thrombus, or a coronary spasm . . . caused the event." (Id. at 13.)

Plaintiff responds that Defendants' motion to exclude is based upon a faulty premise that the occlusion of the right coronary artery is the "medical caus[e]" of Mr. Woodley's death. (Pl. Resp. to Mot. Exclude at 8.) Plaintiff contends that Defendants misunderstand Dr. Lauridson's opinions concerning the "mechanism of death" and the "cause of death"; hence, as discussed above, Plaintiff submitted an affidavit from Dr. Lauridson clarifying the distinction. (Dr. Lauridson Aff. at 6.) Relying on Dr. Lauridson's affidavit, Plaintiff contends that Dr. Lauridson's methodology meets the Daubert standard and that, "[i]n reality, [] Defendants' attacks are not on Dr. Lauridson's methodologies, but on his conclusions." (Pl. Resp. to Mot. Exclude at 3-9.)

Defendants' arguments, outlined above, are predicated upon Dr. Lauridson's deposition testimony, with Defendants urging the exclusion of Dr. Lauridson's affidavit. (See Defs. Reply Br. at 1-2 (Doc. No. 56).) As explained above, however, the affidavit is properly before the court. Concerning the absence of an autopsy, Defendants raised the same argument in support of their motion to strike Dr. Lauridson's affidavit. The court rejected that argument, above, and the court rejects it here for the same reasons. As discussed in the previous subsection, in his affidavit, Dr. Lauridson provides a plausible explanation why an autopsy was not required in this case. He also explains why it was not necessary for him to ascertain definitively whether a thrombus, a clot on a ruptured plague or a coronary artery spasm caused the occlusion of Mr. Woodley's coronary in

13

order to reach his conclusion that the proximate cause of Mr. Woodley's death was the cervical spine injury which Mr. Woodley suffered as a result of the accident at issue. More specifically, as to his latter conclusion, Dr. Lauridson explains that, after the accident, Mr. Woodley suffered a number of documented "complications" (outlined on pages seven through nine of his affidavit) which "commonly" accompany cervical spine injuries and which "contributed to the deterioration of [Mr. Woodley's] previously stable coronary artery disease." (Dr. Lauridson Aff. at 9.) He then states, while "[t]here are three possible causes of the occlusion of the coronary artery of Mr. Woodley," as set out above, "[i]t is more probable than not that all of these, *i.e.*, the thrombus, clot on a ruptured plague and coronary artery spasm, were *caused by* the complications of the spine fracture documented above." (Id. at 9-10 (emphasis added).) In short, the court finds that Dr. Lauridson's affidavit rebuts, in clear terms, Defendants' arguments challenging the reliability and relevancy of Dr. Lauridson's opinions.

Furthermore, the court finds that Dr. Lauridson has demonstrated that distinguishing between "mechanism of death" and "cause of death" is a well-accepted scientific methodology within the forensic pathology community. (Dr. Lauridson Aff. at 4-5.) In addition to attesting that he has used this methodology in approximately 4,000 cases throughout his thirty-five-year career as a forensic pathologist, Dr. Lauridson demonstrates that there is ample scientific support in published medical literature which supports not only his methodology, but also the existence of a causal relationship

14

between spinal cord injuries and resulting heart attacks. (Id. at 4-5, 10); (Pl. Resp. to Mot. Exclude at 6-7 (Doc. No. 50).)

Defendants, though, present another argument in opposition to Dr. Lauridson's testimony. While Defendants do not contest Dr. Lauridson's qualifications as a forensic pathologist, they contend that only a cardiologist is qualified to render an opinion as to Mr. Woodley's cause of death. (Defs. Br. in Support of Mot. to Exclude at 13-15.) Again, though, Dr. Lauridson's affidavit forecloses Defendants' argument. Dr. Lauridson explains that "[t]he strict differentiation of cause of death and mechanism of death falls directly and exclusively within the practice and expertise of the forensic pathologist." (Lauridson Aff. at 4); (see also Lauridson Aff. at 6, explaining that "[t]he training of the forensic pathologist and the daily practice of forensic pathology involve[] the evaluation of the cardiovascular system. This is a diagnostic methodology that is separate from the practice of cardiology, which involves treating living patients. The practice of forensic pathology involves analyzing deaths.") Plaintiff also points out that Dr. Papapietro, a cardiologist and Mr. Woodley's treating physician, opined that questions related to spinal cord injuries and their effect on the heart are not within his expertise. (Pl. Resp. to Mot. to Exclude at 9 (Doc. No. 50).) The only *evidence* in the record, thus, is contrary to Defendants' *argument* that an experienced forensic pathologist is not qualified to testify about the cause of death.

In sum, the court finds that Plaintiff has satisfied her burden of establishing the reliability of Dr. Lauridson's methodology. Daubert, 509 U.S. at 593-94 (discussing

factors for court to consider when determining whether a particular scientific methodology is reliable); Phillips, 238 Fed. Appx. at 540 (placing burden on proponent of expert testimony to establish the testimony's reliability). Furthermore, the court finds that Dr. Lauridson's testimony will assist the jury in deciding the issue of proximate cause and, thus, that it is relevant. See Fed. R. Evid. 702; McDowell, 392 F.3d at 1299.

Furthermore, the court finds that Defendants' arguments concerning flaws in Dr. Lauridson's methodology and qualifications go only to the weight, not admissibility. See Daubert, 509 U.S. at 589. Defendants have at their disposal the traditional trial tools to challenge Dr. Lauridson's opinions. Those tools include "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Id. at 596. As stated in Daubert, "[t]hese conventional devices, rather than wholesale exclusion[,] . . . are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." Id. Accordingly, the court finds that Defendants' motion to exclude is due to be denied.

### C. Defendants' Motion for Summary Judgment

The parties agree that proximate cause is an essential element of each of Plaintiff's claims in this lawsuit. (Pl. Resp. to Summ. J. at 7 (Doc. No. 51)); (Defs. Summ. J. Br. at 8, 17 (Doc. No. 43).) Defendants argue that Plaintiff cannot prove proximate cause because Plaintiff's expert, Dr. Lauridson, fails to satisfy the Daubert standard and that, therefore, his testimony on causation is inadmissible. (Defs. Summ. J. Br. at 15-18.) The

court, though, has determined that Dr. Lauridson's opinion testimony as to proximate cause is admissible; that ruling is dispositive of Defendants' motion for summary judgment. Namely, having reviewed Dr. Lauridson's testimony in the light most favorable to Plaintiff, see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the court finds that Dr. Lauridson's opinion that the "proximate cause" of Mr. Woodley's death was the "cervical spine fracture incurred in [the subject] motor vehicle accident" is sufficient to create a genuine issue of material fact to overcome Defendants' motion for summary judgment.[3] (Dr. Lauridson Aff. at 5-6.) Accordingly, the court finds that Defendants' motion for summary judgment is due to be denied.

## V. ORDER

According, it is CONSIDERED and ORDERED that Defendants' motion to exclude (Doc. No. 40), motion for summary judgment (Doc. No. 42) and motion to strike (Doc. No. 55) be and the same are hereby DENIED.

Done this 30th day of May, 2008.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] In light of the court's finding that Dr. Lauridson's testimony creates a genuine issue of material fact on causation, it is unnecessary for the court to address Defendants' remaining arguments that other evidence is insufficient to create a genuine issue of material fact on causation.

17

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).